UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WEX HEALTH, INC.,
    *Plaintiff*,

v.

BASIC BENEFITS, LLC *et al.*,
    *Defendants*.

No. 3:20-cv-1653 (JAM)

### ORDER DENYING MOTION TO STAY

Plaintiff WEX Health Inc. ("WEX") sued defendant Total Administrative Services Corp. ("TASC" or "Total") over a business dispute. TASC moved to compel arbitration, I denied the motion, and TASC appealed. Now TASC has asked me to stay its participation in this case until the Second Circuit decides its appeal. I will deny the motion for substantially the reasons stated by WEX in its objection.

### BACKGROUND

WEX sells software to employee benefits administrators. Two of its clients were TASC and the Benefit Administrative Services International Corporation ("Old BASIC"). In 2019, TASC allegedly bought Old Basic's assets and put them in a subsidiary called Basic Benefits, LLC ("New BASIC"). WEX then continued to sell its software to New BASIC. But soon its relationship with the companies soured. And now it has sued all three entities—TASC, Old BASIC, and New BASIC—for breach of contract, tortious interference with contract, and unfair trade practices. *See generally WEX Health, Inc. v. Basic Benefits, LLC*, 2022 WL 19336 at *1–2 (D. Conn. 2022).

WEX and the two BASICS have been cooperating in discovery. But TASC has resisted. In May 2021, it moved to dismiss the case or compel arbitration, claiming that WEX and TASC

1

had agreed under a 2010 contract to arbitrate this dispute in Minnesota.[1] I denied the motion, reasoning that the contract had been superseded by a 2019 agreement that required the case to be brought here in a court in Connecticut. *Id*. at *2–3.

TASC then appealed this decision. It also asked the Second Circuit to stay its participation in the case pending the appeal.[2] The Second Circuit, however, ruled that TASC was required under Fed. R. App. P. 8 to first seek a stay from the district court before seeking a stay from the court of appeals.[3] So now TASC has moved here for a stay.

## DISCUSSION

In determining whether to issue a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *SEC v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (*per curiam*).[4]

"The degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Thus, for example, even if a party is unable to show that "ultimate success on the merits is more likely than not," a stay may nonetheless enter if the party shows at least "serious questions" about the merits, so long as the party can "additionally establish that the balance of hardships tips *decidedly* in its favor."

---

[1] Doc. #28.
[2] *See* Docs. #76, #86.
[3] Doc. #90.
[4] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

2

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (emphasis in original).

### *Likelihood of success*

TASC has not shown a likelihood of success or even serious questions about the merits. As I explained in my ruling, the Second Circuit has held that "an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause specifically precludes arbitration." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014). That is what happened here. The parties initially agreed to arbitrate in Minnesota but then later agreed to a forum selection clause for their disputes that stem from a later agreement to be resolved by a state or federal court in Connecticut.

TASC seeks to distinguish *Goldman, Sachs* by arguing that the parties' forum selection clause is merely permissive.[5] But it fails to cite or acknowledge the language in the contract which I relied on in my ruling—that the parties "agree and consent to submit any and all suits, actions, or proceedings arising out of or relating to this Statement of Work *solely* to the jurisdiction of the Superior Court of the State of Connecticut, Hartford County, or the United States District Court, Hartford, Connecticut."[6] Because the parties agreed "solely" to the jurisdiction of Connecticut courts, there is no reasonable argument that their forum selection clause is merely permissive.

Similarly, TASC argues that the later agreement cannot preclude arbitration because it "does not even mention arbitration" by name.[7] But as I explained the last time around, *Goldman*

---

[5] Doc. #91 at 4.
[6] Doc. #101 at 12 (emphasis added).
[7] Doc. #91 at 5.

*Sachs* expressly rejected this argument, holding that for a forum selection clause to displace an arbitration clause, "there is no requirement that [it] mention arbitration." 764 F.3d at 215.

It would be one thing if TASC made a serious effort to grapple with language that it does not like from the contract, from my ruling, and from the Second Circuit. Instead, as WEX notes, "TASC recycles—often verbatim—the same arguments it made to this Court before, often without acknowledging—let alone refuting—the rationale this Court gave for denying its motion to compel arbitration."[8] TASC has not shown a likelihood of success or even serious questions that go to the merits of its claim that the parties must arbitrate those claims raised by WEX in this lawsuit.

### *Irreparable harm to TASC*

TASC makes a middling showing of irreparable harm. To be sure, the denial of a motion to compel arbitration can always be said to cause irreparable harm in the abstract. After all, every day that a party must litigate in court, it "loses" its claimed "right" to arbitrate instead. Still, the harm itself here is limited, even if irreparable. The reality for now is that a denial of a stay means that TASC must submit to court-ordered discovery. It is far from clear that there will be any ultimate adjudication of WEX's claims before the Second Circuit rules on TASC's appeal.[9]

Other courts recognize that the harm resulting to a party from having to submit to discovery while an appeal is pending from denial of a motion to compel arbitration does not necessarily warrant the grant of a stay. *See McDonald's Corp. v. Vanderbilt Atl. Holdings LLC*, 2021 WL 1784315, at *6 (E.D.N.Y. 2021); *Lucy v. Bay Area Credit Serv. LLC*, 2011 WL 13344167, at *2 (D. Conn. 2011).

---

[8] Doc. #101 at 10.
[9] TASC could renew its motion to stay in the event that a trial date is set. Better yet, TASC could move to expedite its appeal in the Second Circuit, which it has yet to try to do.

TASC's claim of irreparable harm is weakened as well by the fact that two of its corporate affiliates or business partners—New Basic and Old Basic—are also parties to this litigation. WEX has rightfully sought discovery from these parties, and even if TASC itself were not a party to this action, WEX could reasonably seek relevant discovery from TASC as to the claims against New Basic and Old Basic on the basis of TASC's affiliation with these two companies. *See* Fed. R. Civ. P. 45. TASC has done nothing to show that it would not be subject to discovery even if it were a non-party to this action.

### *Substantial injury to WEX*

WEX has shown that it will be substantially injured if I enter a stay pending appeal. WEX has served discovery that is long overdue from TASC. Moreover, as WEX notes, it will be subject to discovery demands by TASC as to TASC's separate claims against WEX in the Minnesota arbitration, while unable to develop the record for its own claims.[10] Although TASC claims that there will only be a slight delay occasioned by the appeal, it has not sought to expedite the appeal, and it does not explain why the delay will be slight.

### *Public interest*

Because this case is a private commercial dispute, it is hard to say that the public interest weighs strongly one way or another. *See McDonald's Corp.*, 2021 WL 1784315, at *7; *Starke v. SquareTrade, Inc.*, 2017 WL 11504834, at *3 (E.D.N.Y. 2017). To the extent that one can say that there is a "public interest" in the enforcement of arbitration clauses, there is surely an equal public interest in the enforcement of forum selection clauses.

---

[10] Doc. #101 at 16–17.

As a general equitable matter, I continue to have the concerns that I have expressed about whether TASC is litigating its motion to compel arbitration in good faith.[11] The public interest would not be well served by an order rewarding TASC for these efforts.

All in all, I conclude that TASC has failed to show a likelihood of success or serious questions going to the merits. Although TASC has demonstrated some irreparable harm, the harm is not considerable in the context presented here. Substantial injury would result to WEX if I entered a stay. And the public interest does not weigh strongly one way or another. The factors weigh overall against granting the motion to stay but without prejudice to renewal in the event of an unexpected delay in the resolution of the appeal.

## CONCLUSION

The Court DENIES the motion to stay (Doc. #91). TASC shall fully comply with its discovery obligations.

It is so ordered.

Dated at New Haven this 17th day of March 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[11] Doc. #86.